## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

**STEVEN PINDER**
**ADC #123397**                                                        **PLAINTIFF**

**V.**                         **CASE NO. 5:14-CV-359-JM-BD**

**ALVA GREEN McDOWELL, et al.**                        **DEFENDANTS**


## RECOMMENDED DISPOSITION

### I.     Procedures for Filing Objections

This Recommended Disposition ("Recommendation") has been sent to Judge
James M. Moody Jr.  You may file written objections to this Recommendation.  If you file
objections, they must be specific and must include the factual or legal basis for your
objection.  Your objections must be received in the office of the United States District
Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without
independently reviewing the record.  By not objecting, you may also waive any right to
appeal questions of fact

### II.     Background

Steven Pinder, an Arkansas Department of Correction ("ADC") inmate, filed this
lawsuit pro se under 42 U.S.C. § 1983, alleging that Defendants acted with deliberate
indifference to his serious medical needs and violated his first amendment rights.
(Docket entries #2, #13)  The Court initially allowed Mr. Pinder to proceed *in forma
pauperis* (IFP), but later revoked his IFP status after determining that he had failed to

sufficiently allege that he was in imminent danger of serious physical harm so as to be exempt from the "three strikes" rule.  (#49)  After Mr. Pinder failed to timely submit the statutory filing fee, the Court dismissed Mr. Pinder's claims, without prejudice.  (#64) Mr. Pinder appealed the Court's decision.[1]

On appeal, the Court of Appeals for the Eighth Circuit granted Mr. Pinder leave to proceed IFP, vacated this Court's orders, and remanded the case for further proceedings. Specifically, the Court stated, "we vacate the district court's orders and remand for the review of the merits of the entire amended complaint."  (#81 at p.3) (emphasis added)

The ADC Defendants, the Medical Defendants[2], and Maxor Pharmacy moved for summary judgment on Mr. Pinder's claims against them, arguing that he had failed to exhaust his administrative remedies.  (#114, #117, #120)  The Court, however, denied the motions based on the explicit instructions of the Court of Appeals.  (#137)

Separate Defendant Maxor Correctional Pharmacy Services ("Maxor") and the ADC Defendants have now moved for summary judgment on the merits of Mr. Pinder's claims.  (#160, #174)  Mr. Pinder has responded to the motions.  (#169, #170, #171, #180, #181, #182, #184, #185, #186)  In addition, the Medical Defendants have moved to dismiss Mr. Pinder's claims based on his failure to complete a Health Insurance

---

[1] Mr. Pinder also appealed the Court's finding that he was a "three striker" under the Prison Litigation Reform Act.

[2] The Medical Defendants' motion was a motion for partial summary judgment, rather than a motion for summary judgment.  (#117)

Portability and Accountability Act (HIIPAA) medical authorization.  (#158)  Mr. Pinder

also has filed a motion for partial summary judgment, two motions to compel, and two

motions for preliminary injunctive relief.  (#187, #146, #177, #152, #201)

Based on the evidence in the record, the Court recommends that the Defendants'

pending motions for summary judgment (#160, #174) be GRANTED.  Mr. Pinder's

claims against Maxor, as well as those against the ADC Defendants, should be

DISMISSED, with prejudice.[3]  In addition, the Medical Defendants' motion for sanctions

(#158) should be GRANTED.  Mr. Pinder's claims against the Medical Defendants

should be DISMISSED, without prejudice.  Finally, Mr. Pinder's pending motions (#187,

#146, #177, #152, #201) should be DENIED, as moot.

## III.  **Discussion**

A.     Defendants' Motions for Summary Judgment

1.     Standard

Summary judgment is appropriate only when the evidence, viewed in the light

most favorable to the nonmoving party, shows that there is no real dispute about the facts

that are important to the outcome of the case.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 246, 106 S.Ct. 2505 (1986).

---

[3] Mr. Pinder asserts additional claims in his response to the ADC Defendants' motion for summary judgment.  Because these claims were raised for the first time in the response and are not included in this lawsuit, the Court will not address those claims in this Recommendation.

2.      Maxor Correctional Pharmacy Services

Maxor is a mail-order pharmacy and distributer of pharmaceutical services and supplies to Correct Care Services.  On April 7, 2014, Maxor began providing pharmaceutical services and supplies to the Tucker Unit of the ADC.  (#195-1 at p.1)

Between April 7, 2014, and the date that Mr. Pinder filed this lawsuit, September 26, 2014, Mr. Pinder filed two medical grievances related to his prescription medications. (#195-2)  Mr. Pinder has conceded that his only claim against Maxor relates to Maxor's administration of his glaucoma medication.  (#195-4 at p.11)

In their motion for summary judgment, Maxor first argues that, although Correct Care Services is a state actor for purposes of liability under 42 U.S.C. § 1983, it is not.  At this time, the Eighth Circuit has not so ruled.  Accordingly, for purposes of this motion, the Court will assume that Maxor is a state actor.

Maxor, however, is s a private corporation.  "A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978)).  To prove a policy, custom or action, Mr. Pinder must prove "a continuing, widespread, persistent pattern of unconstitutional misconduct" by Maxor's employees; "[d]eliberate indifference to or tacit authorization of such conduct by [Maxor's] policymaking officials after notice to the officials of that misconduct;" and that he "was injured by acts pursuant to

4

[Maxor's] custom, *i.e.*, that the custom was the moving force behind the constitutional violation." *S.J. v. Kansas City Mo. Pub. Sch. Dist.*, 294 F.3d 1025, 1028 (8th Cir. 2002) (internal quotations and citations omitted).

Here, Mr. Pinder has failed to come forward with any evidence of an unconstitutional policy, custom, or action by Maxor.  Rather, Mr. Pinder claims that he went several days without glaucoma medication on several different occasions.  (#195-4 at p.11)

Further, Mr. Pinder has failed to present any evidence showing that any delay on the part of Maxor was intentional or deliberately indifferent.  Negligence, even gross negligence, will not support a constitutional claim for deliberate indifference.  *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (plaintiff must show more than even gross negligence).  Without such evidence, Mr. Pinder has failed to create any genuine question of material fact that would preclude summary judgment in favor of Maxor.

      3.     ADC Defendants' Motion for Summary Judgment

      a.     Defendant Griffin

Mr. Pinder claims that Defendant Griffin was deliberately indifferent to his need for migraine medication and the difficulties he encountered by being administered pills that were "crushed and covered in water."  Mr. Pinder seeks to hold Defendant Griffin liable based on his involvement in the grievance process.  Mr. Pinder's claims against Defendant Griffin fail as matter of law.

First, Defendant Griffin's denial of several of Mr. Pinder's grievances is insufficient to establish liability under § 1983.  *Rowe v. Norris*, 198 Fed. Appx. 579 (8th Cir. 2006).  Furthermore, Defendant Griffin can be held liable only if he "actually knew of but deliberately disregarded" Mr. Pinder's serious medical need.  *Id*.  This showing requires a mental state "akin to criminal recklessness."  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).  As noted, Mr. Pinder must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).  Stated another way, to prevail on this claim, Mr. Pinder must show that the Defendant Griffin's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

Here, the undisputed evidence reveals that Defendant Griffin was not the official who responded to the nine grievances where Mr. Pinder complained about his failure to receive migraine medication.  In the light of this undisputed evidence, Mr. Pinder cannot show that Defendant Griffin knew of, but disregarded, his need for medical treatment. Mr. Pinder did complain about the ADC's "crush and cover" policy in two grievances – MX-13-2421 and MX-13-02432.  The Administrator for Medical and Dental Services, Defendant Griffin's subordinate, investigated and responded to those grievances.  (#174-9 at pp.3-4)

In his response to grievance MX-13-2421, the Administrator noted that the prescription specified that Mr. Pinder's medication should be crushed and covered.  The Administrator further responded that Mr. Pinder should drink more water to avoid scratching his throat with the pills.  (#174-4 at p.4)

In response to grievance MX-13-2432, the Administrator noted that inmates were provided disposable cups with crushed and covered medications.  (#174-9 at p.4)  The Administrator agreed with the unit level staff member that these cups were destroyed after inmates returned them, despite Mr. Pinder's allegation that the cups were reused.  (*Id.*)

Even if the Administrator had failed to investigate Mr. Pinder's complaints, which the papers presented show otherwise, Defendant Griffin cannot be held liable based solely on the conduct of his subordinates.  *Ambrose v. Young*, 474 F.3d 1070 (8th Cir. 2007).  Because Mr. Pinder has failed to come forward with any evidence even suggesting that Defendant Griffin acted with criminal recklessness with regard to his medical treatment, his claims against Defendant Griffin fail as a matter of law.

    b.    Defendant Straughn

Mr. Pinder claims that Defendant Straughn rejected the publication *Merck Manual of Medical Information* ("*Merck Manual*") in violation of his first amendment rights.  Mr. Pinder also alleges that Defendant Straughn rejected the publication at issue in retaliation for Mr. Pinder's filing this civil action.

It is undisputed that the *Merck Manual* arrived at the Maximum Security Unit on September 29, 2014, three days after Mr. Pinder filed this lawsuit.[4]  (#13 at p.53)  The mail room supervisor forwarded the publication to the Publication Review Committee on that date.  (#174-8 at p.2)  Each member of the Publication Review Committee, including Defendant Straughn, voted to reject the publication because it contained information about pharmaceuticals, including the content of both prescription and generic medication.[5]  (*Id*.)  On October 2, 2014, Mr. Pinder was notified that the Publication Committee had voted to reject the delivery of the *Merck Manual*.  (*Id*. at p.3)

1.      First Amendment Claim

The ADC publications policy at issue, AD 14–22, provides that publications "are subject to inspection and may be rejected if found to be detrimental to the security, discipline or good order of the institution . . .."  (#174-5 at p.1).  The ADC Defendants rely on *Turner v. Safley*, 482 U.S. 78, 89 (1987), to support their position that a prison regulation that is alleged to impinge on prisoners' constitutional rights is valid if it is reasonably related to legitimate penalogical interests.  In *Turner*, the Court identified four factors to consider when determining if a restriction is reasonable: (1) whether a valid, rational connection exists between the regulation and the interest asserted; (2) whether

---

[4] Defendant Straughn was not named as a Defendant until Mr. Pinder filed his amended complaint on November 14, 2014.  (#13)

[5] Defendant Straughn testified that, in 2014, the Publication Review Committee consisted of Chair Person/Deputy Warden Steve Outlaw, Amanda Bacus, Ronald Watson, and Joyce Gooley.  (#174-8 at p.1)

alternative means of exercising the right exist; (3) the effect of the accommodation on the guards, other inmates, and the allocation of prison resources; and (4) whether an alternative exists which will accommodate the prisoner's needs with de minimis impact on the prison's asserted interests. *Id*. at 89-91.

First, there is little question that there is a rational connection between the policy at issue (and Defendant Straughn's conduct in accordance with that policy) and the interest of prison security. Defendant Straughn testified that the *Merck Manual* contains information regarding the content of pharmaceuticals and their intended effects and side-effects. (#174-8 at p.2) The ADC publication policy specifically states that publications may be rejected if they provide "instructions for production of alcohol or other drugs." (#174-5 at p.2) Further, Defendant Straughn testified that, in his experience, "it is important to prevent information about the content of drugs from entering the prison. Prescription and generic drugs can be used as contraband, to sell or trade other illegal items. Drugs can also be abused by inmates, which leads to a number of other behavioral and security problems." (#174-8 at p.2)

Turning to the second factor, whether alternative means for exercising his first amendment rights exist, Mr. Pinder specifically stated that he had other sources of medical information. He testified that he checked out books from the library; read articles provided by other inmates; had copies of similar material; and has a cousin who can research for him using Wikipedia. (#174-7 at pp.5, 8-9)

9

The third factor, the impact that accommodating Mr. Pinder's rights would have on prison staff and other prisoners, also weighs in Defendant Straughn's favor.  Allowing inmates to possess information about the content of both generic and prescription pharmaceuticals could have a detrimental impact on inmate health and security.  As noted, prison officials have an interest in prohibiting information regarding the content and side-effects of drugs from entering the prison population based on the presence of such drugs within ADC units, the ability of the inmates to sell or trade those drugs, and the ability of inmates to abuse specific drugs based on specific effects or side-effects.  Courts "must be deferential to the prison officials' views of what material may be inflammatory."  *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (citing *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004)).  "As the Supreme Court has cautioned, 'prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of a prison.'"  *Id.* (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874 (1989)).

In his response to the ADC Defendants' motion,  Mr. Pinder alleges that the *Merck Manual* does not contain information regarding the content of pharmaceuticals.   Even if Mr. Pinder is correct, Defendant Straughn would be entitled to qualified immunity.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who

knowingly violate the law." *Stanton v. Sims*, __U.S. __, 134 S.Ct. 3, 5 (2013) (per

curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074  (2011)).  It

shields officers from liability "unless [their] conduct violates a clearly established

constitutional or statutory right of which a reasonable person would have known."

*Shekleton v. Eichenberger*, 677 F.3d 361, 365 (8th Cir. 2012) (quoting *Brown v. City of

Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)).

Here, the Court cannot conclude that, in September 2014, the law was clearly

established that Defendant Straughn should have known that he should reject the

recommendation of the Publication Review Committee and allow Mr. Pinder to receive

the *Merck Manual*.  The law both at that time and as it stands today gives great deference

to prison officials in determining what publications cause safety concerns in a prison

environment.  See, *e.g.*, *Murphy*, 372 F.3d at 986 ("We recognize and defer to the

expertise of prison officials on what is likely to be inflammatory"); *Overton v. Bazzetta*,

539 U.S. 126, 132, 123 S.Ct. 2162 (2003) ("We must accord substantial deference to the

professional judgment of prison administrators, who bear a significant responsibility for

defining the legitimate goals of a corrections system and for determining the most

appropriate means to accomplish them."); *Hamilton v. Schriro*, 74 F.3d 1545, 1553 (8th

Cir. 1996); *Ivey v. Ashcroft*, 62 F.3d 1421, 1421 (8th Cir. 1995 (unpublished) ("[P]rison

officials have broad discretion to censor or restrict an inmate's receipt of a publication to

serve a legitimate penological interest—including the need for institutional security").

Defendant Straughn is entitled to qualified immunity on Mr. Pinder's first amendment claim against him.

In addition, Mr. Pinder's request for injunctive relief against Defendant Straughn fails for another reason.  Specifically, in his complaint, Mr. Pinder requests that the Court order "defendants to cease their retaliatory actions, . . . stop their censorship of books containing medical information, [and] stop the ban on books containing medical information."  (#13 at pp.18-19)

Since Mr. Pinder filed this lawsuit, he has been transferred to Varner Supermax Unit of the ADC.  (#97)  In addition, Defendant Straughn has been re-assigned to the Cummins Unit.  (#174-8 at p.3)  Defendant Straughn, therefore, no longer has any involvement in the publication-review process at either the Maximum Security Unit, or the Varner Unit, where Mr. Pinder is currently housed.  Thus, Mr. Pinder's request for injunctive relief from Defendant Straughn is now moot.  *Martin v. Sargent*, 780 F.2d 1334 (8th Cir. 1985) (inmate's request for injunctive relief from a warden was moot after his transfer).

2.      Retaliation Claim

To prove retaliation, Mr. Pinder must present evidence that: he engaged in constitutionally protected activity; Defendant Straughn took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and

retaliation was the actual motivating factor for the adverse action. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). An inmate claiming retaliation is faced with the substantial burden of proving that the actual motivating factor for the adverse action was as alleged. *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996). Moreover, allegations of retaliation must be more than speculative and conclusory. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996).

Here, Mr. Pinder has failed to present any evidence to support his retaliation claim. In contrast, Defendant Straughn has explained that the publication at issue was rejected by the Publication Review Committee as a whole because of its contents.

Even if Mr. Pinder could prove that Defendant Straughn's conduct was motivated, at least in part, by retaliation, this claim still would fail. A prisoner cannot prevail on a retaliation claim if the adverse action at issue was taken for both a legitimate reason and an improper motive, such as retaliation. *Id.; Webb v. Hedrick*, Case No. 09-2896, 2010 WL 4366438, *1 (8th Cir. Nov. 5, 2010) (unpublished opinion) (explaining that a prisoner cannot prevail "if retaliation was one factor" in the defendants' decision); *Ponchik v. Bogan*, 929 F.3d 419, 420 (8th Cir. 1991) (rejecting a retaliation claim when retaliation was only one of the factors leading to the inmate's transfer).

B.    Medical Defendants' Motion for Sanctions

Mr. Pinder filed this lawsuit alleging that the Medical Defendants were deliberately indifferent to his serous medical needs. The Medical Defendants later served

13

discovery on Mr. Pinder, including a HIPAA-compliant medical authorization.  Mr. Pinder, however, did not sign the authorization.

In August of 2016, the Medical Defendants moved for an order compelling Mr. Pinder to complete a HIPAA-compliant medical authorization within ten days.  (#138) The Court, instead, gave Mr. Pinder thirty days to provide the Defendants with the medical authorization.  The Court explained to Mr. Pinder that he had placed his medical condition at issue by filing the lawsuit and his execution of a HIAA-compliant medical authorization was required and not subject to debate.  In addition, the Court specifically warned Mr. Pinder that his claims could be dismissed if he failed to comply with the Court's order.  (#140)

Although Mr. Pinder has filed two hand-written "authorizations" with the Court (#150, #193), he continues to refuse to complete a valid, effective, and complete authorization.  The time for doing so has passed.[6]

The Medical Defendants' motion for sanctions should be granted based on Mr. Pinder's refusal to provide them with a valid and effective HIPAA-compliant medical authorization.

---

[6] Mr. Pinder's papers state that he has completed the limited authorizations "over his objection" and "threat of dismissal of his lawsuit." (#193)  Mr. Pinder's version of medical authorizations limit: the medical care providers from which the Medical Defendants may seek medical records; the relevant time periods for which the Medical Defendants may seek medical records; the categories of medical records the Medical Defendants may seek; and the use of Mr. Pinder's medical records.

IV.   **Conclusion**

The Court recommends that the motions for summary judgment filed by Maxor

Pharmacy and the ADC Defendants (#160, #174) be GRANTED.  Mr. Pinder's claims

against Maxor Pharmacy and the ADC Defendants should be DISMISSED, with

prejudice.

In addition, the Medical Defendants' motion for sanctions (#158) should be

GRANTED.  Mr. Pinder's claims against the Medical Defendants should be

DISMISSED, without prejudice.

Finally, Mr. Pinder's pending motions should be DENIED, as moot.[7]  (#146, #152,

#177, #187, #201)

DATED, this 27th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7]  With regard to Mr. Pinder's pending motions for preliminary injunctive relief, he has failed to present sufficient facts for the Court to conclude that he will face irreparable harm absent Court intervention.  *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 977 (8th Cir. 2005).  "Possible harm" is not enough to support a preliminary injunction; rather, there must be an actual threat of harm.  *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) (citing *Dataphase Sys. v. C.L. Sys.*, 640 F.2d 109, 113 (8th Cir. 1981)).  Further, Mr. Pinder's most recent motion for preliminary injunctive relief includes allegations unrelated to the claims raised in this lawsuit and individuals who are not parties to this lawsuit.  (#201, #202)